MONEY Life Insurance Company v. Perez May it please the Court, Mr. Chief Judge, Judges. My name is Timothy Weber. I represent Dr. Bernard Perez. I'll be focusing in on the fact that this case, from the very outset of the relationship of the parties, is exclusively governed by a contract of insurance. And that is a highly regulated matter in the state of Florida. The terms of contracts have to be approved by the Office of Insurance Regulation, the forms of contracts, the statute requires all of the provisions of the contract and the risks being taken by both parties to be set forth in the contract. And here, Dr. Perez purchased this policy written by the insurance company. He got diagnosed with cancer in 2011 and started following the contract's terms of submitting his proofs of loss. Can I ask you a question? We don't have much time and there are a lot of, in my mind, procedural issues with this case. Your breach of contract claim, I want to see if I can visualize it right. Your breach of contract claim is a claim going forward from the time that Money, or Money, however you pronounce it, stopped paying Dr. Perez, right? Correct. There were no claims of breach beforehand when he received the last benefit payment. That is true. Okay. Their claim of unjust enrichment, whether it's legally valid or not, we'll talk about that, but whether it's legally valid or not, that claim was backwards looking. In other words, they sought to recoup, right, through an unjust enrichment theory what they had paid to Dr. Perez. That's correct. Okay. So my question to you is this then. Is the issue about Money's ability to demand an audit relevant to the unjust enrichment claim assuming that they could bring an unjust enrichment claim? That's a big assumption, but assuming they could bring an unjust enrichment claim, does the audit issue have anything to do with their unjust enrichment claim given that it's a backward looking claim? I think it absolutely does because the demand when they make it is we're demanding an audit so that we can determine your eligibility for benefits going all the way back to the onset date. They don't say that. That's in their May 31st, 2018 letter which set off this fire. They say we need the audit not for determining your prospective eligibility. We need the audit to determine your eligibility for benefits. I thought they asked for the audit because they stopped paying you because they thought maybe there was material misrepresentations and they weren't sure A, that he really was disabled and B, they weren't sure what the amount of the disability otherwise would have been. So they said we're not paying anymore in February of 18 because we don't have the answers to those questions. Provide us with blah, blah, blah, blah. You said no. I'm not obliged to do that. They stopped paying and then the lawsuits commenced. Isn't that what happened? That is not what happened. So that's how they recast their position later in the litigation. The May 31st, 2018 letter in the original audit demand was to determine eligibility going back to the onset date. They wanted to go back to June of 2011. Okay. I hear that. They've already made those payments, true?  Okay. So the significance is that when they do that and you refuse, they stop making payments going forward, right? Correct. But there's two things. Its relevance is going forward, not going backwards. But they simultaneously maintained in this case, they had a right under the policy to go back and audit the insured and redetermine eligibility from the onset date while saying that the idea of going back and redetermining eligibility from the onset date was so far outside the pale of the contract that we have to imply a remedy. But I think the point here is that whether you were required to disgorge or not the payments between 15 and 18 didn't turn on whether or not an audit was required under the terms of the contract acceptable proof of loss. We can agree on that, can't we? That is true, yes. Help me with first the unjust enrichment claim. Equitable claim, it doesn't sound at law, but in equity, disgorgement is generally perceived in Florida as being, everywhere else too, as being an equitable claim. Could they have sued for breach of contract to get their money back? No. Because I understood you to say no. Correct. The policy contained no feature allowing the insurer to ask for that payment back if and when it changed its mind. Is that your view? They didn't put a provision in their policy allowing them to do that, number one, which was the Utah court says you have to put it in the policy if you want to go do that. Secondly, this policy governs the subject matter of when they're required to pay. The policy is very explicit. You submit your proofs of loss, in short, and when we deem them acceptable, we pay you. And so we believe the policy strictly governs the timing and sequence of payments and does not contain a provision. So they didn't put it in the policy, though. Were they obliged to? As I understand unjust enrichment, it is equitable, but it's also in the nature of quasi-contract. That is, in the absence of a contract, we have the legal fiction of a quasi-contract that obliges restitution. And as I understand your argument, your argument is, well, you have an express contract. There can be no quasi-contract, period. Correct. And it's so evident here where they say with the benefit that you appreciated us conferring on you is us discharging our contractual obligation to pay a monthly benefit. This was dismissed, but they brought a fraud claim. Florida law says that insurance fraud, in part, it can be the knowing submission of false, incomplete, or misleading information concerning any fact or thing material to a claim with intent to deceive the insurance company. That claim was dismissed. But at least in the abstract, an insurance company could sue a policyholder who violated that law. Correct, because that is a tort independent from the contract, right? Fraud requires proof of intent. All right, so I just want to be clear. I understand this. The policy itself provides no method by which money could seek the disgorgement of a payment of some that it claimed had been unlawfully and illegally paid, right? Correct. The policy does not. And what they said was that... So they didn't sue in fraud. They didn't sue in mistake. Is that all they could have done? Yes, they would have to allege fraud or mistake. Not a redo. Does that depend in whole or in part on the fact that they made these payments without a reservation of rights? Or is that an independent... I don't think it necessarily does. I think that adds to the fact that the insurance company itself places that interpretation on its policy, that once we deem the proof of loss acceptable and make payment, that's prejudicial to our right to further adjust the claim. We also argued Florida's claims administration statute makes payment of the claim prejudicial to the insurance company. One thing a policy could do is provide for a callback remedy in the event that the insurer becomes aware of facts later that it's made previously an improper payment. They just didn't do that in this policy. They did not do that. They're bound to write their own contracts. They're strictly construed against the insurance company. And that was their argument. Well, because we don't have this remedy in the contract, you should fashion it for us as unjust enrichment. And that's not how it works. The question is whether the topic of the payment of benefits is covered by the insurance policy. And not only is it covered here, when we pay is specifically covered. Help me with some part of the... I haven't read the closing arguments at trial. What was money's argument as to why they did not breach? Was it because they had already shown that your client had submitted insufficient, improper proofs of loss or claim? Or was it that they didn't breach because you didn't agree to submit to an audit or both? So we could never get the district judge to interpret the contract. No, no, I know. I want to know what their closing argument focused on. Their closing argument was a moving target that occurred. Dr. Perez drank too much. Maybe that's why his production was down. Dr. Brodner, who didn't even have a valid opinion on the project, says he wasn't sick. It ranged from maybe the expenses in the practice are questionable. They didn't even prove any of them that were. So they said basically two things, if I will boil it down to a fine point, to answer Judge Jordan. One, we were misled. Dr. Perez misrepresented A, the nature of his malady or injury, and B, the nature and extent of his damages. And two, he didn't submit to the audit. Would that be a fair statement of their closing? They said that somebody who hadn't been guilty of all this would have agreed to the audit or something like that. They said two things. They said one, there was misrepresentation, and two, you didn't agree to the audit. Yeah, they did argue that. Would it be fair to say they made both of those arguments in closing? They did. And we said all along, we moved to dismiss this case from the outset saying they didn't plead misrep with particularity. They didn't plead mistake with particularity. They made no claim of fraud or misrepresentation. They went through the entire phase of discovery saying the information they're relying on for their case is the claim file of the documents Dr. Perez submitted to us, that that was the universe of information that we gave them. They analyzed, they had doctors analyze, they had financial people analyze, they went through his CPT codes, they asked a thousand questions of him and his CPA, and then they satisfied themselves, this is a payable claim. Let me ask a different question. We have also, we have two verdicts from the jury. Verdict one, sustained unjust enrichment and basically compelled you to disgorge $388,000 plus interest. Verdict two said the jury found no breach of contract here on the part of monies. Either because, and there was no special interrogatory, either because you lied or they thought that you misrepresented about material matters, or because you didn't agree to an audit, or for both things I don't know that we can really tell here. What's the fatal error? Why should we vacate that verdict? Because it was undisputed at summary judgment and directed verdict that they never processed his February 2018 claim. They never processed any other claims. They rested solely on, we're demanding this audit and if you don't give it to us, we're not even going to consider whether or not your claims are legitimate or not legitimate. The reason I ask the question is when I looked at the instructions that Judge Jung gave to the jury on that claim, he said the following. He said to recover damages from money for breach of contract, Dr. Perez must prove all of the following. And he laid out five things. One, Perez and money entered into a contract, there's really no dispute about that. Two, Perez did all or substantially all of the essential things which the contract required him to do or that he was excused from doing those things. Three, all conditions required by the contract for money's performance had occurred. Four, money failed to do something essential which the contract required it to do or money did something which the contract prohibited it from doing. Five, Perez was damaged by that failure. On the record the jury had, couldn't, even though I think it's clear that it was error for the trial court not to interpret a clause in a contract that may arguably have been ambiguous at least about the audit thing, you still had to establish all of the conditions. If the jury found that you lied or misrepresented about material matters and they had to make that finding to sustain the unjust enrichment claim, weren't they within their power to reject your breach of contract claim? No, the problem was the district judge refused to instruct the jury on our theory of the case that demanding performance from Dr. Perez that was not due under the terms of the contract was a breach as a matter of law. And we asked the court to instruct the jury that they breached the contract demanding an audit they weren't entitled to and the rest of those issues. Even assuming arguendo that's right. Even assuming that acceptable proof of loss did not include within its ambit the requirement to submit to a detailed audit, wasn't the jury otherwise able to reject your claim anyway if they concluded that you lied about material matters that you presented to the insurance company? Couldn't they have found all of the conditions required by the contract had not been performed? That is to say you didn't do all or essentially all of the things that the contract required you to do to present acceptable proof of loss? It was stipulated that we submitted the claim forms for February 2018 on the forms provided by the insurance company as required by the terms of the policy. That was the condition of the insured accessing the coverage. That was his duty. I submit my claim form and Mone at that point says we've reviewed it. They don't say we've reviewed your claim form and said it was unacceptable. They say no, we're not even going to review it unless you succumb to the audit. I'm simply asking whether the jury could have rejected your theory on the simple theory that you lied and therefore you didn't comply with your obligations under the contract. Not under our pled theory of breach that they refused to further perform any obligations under the contract based on their unlawful demand for performance that was not due. I've got it. Thanks. Thank you. Your position essentially is what they should have, what they could have done. This is me trying to understand. What they could have done was take your February 2018 claim form, said we don't think it's sufficient or suffices, were denying the claim and then force you to either supplement it, provide some new information, or force you to sue for breach of contract. Correct. That was what they could have done. Our position was that the insured under this policy selects his own proofs. Thank you. Let's hear from Mr. Marra. Good morning, Chief Judge Pryor. Your honors, may it please the court, I'm John Marra, representing the Apolli Money Life Insurance Company along with my partner Jake Monk. I'm addressing the question about the audit. This was an attempt by the plaintiff, Dr. Perez, to kind of ignore the real issue in this case. The closing argument, Judge Marcus, that Mone made was that Dr. Perez was not entitled to the benefits he had been paid because he had misrepresented the facts of his claim and his loss of financial, his financial loss was not due solely to disability, which is what the contract requires. If you look at the chronology of this claim, when we take a look at the long history of Mone constantly questioning Dr. Perez's proofs of loss, it wasn't like, give us an audit or nothing. In fact, it is incorrect to say factually that that was the only way that Mone said you could prove your claim was an audit. If you take a look, Judge, at the record, and I'm citing to a January 31, 2018 letter, it's at docket entry 423235 from Carol Walsh, she talked about all through these inquiries that have been made, it hasn't made sense. And of course, it doesn't make sense when we, after discovery, learned all the games that were being played by Dr. Perez and his family practice, including his sister office manager making twice what he as a full-time ocular surgeon was making. Okay, so before they knew all that, they said, because this isn't making sense to us, we're going to move forward with an independent audit to try to, and it's understandable, knowing what was uncovered during discovery, why they wanted to avoid that audit. And it says, while the policy, this is Mone saying through DMS, while the policy does not specifically mention this method of obtaining the acceptable proof of loss, logically, this appears to be the only means under which Dr. Perez will be able to provide it. If there is documentation available that has not yet been provided to us that will answer our questions, please forward it to our attention as soon as possible. But you didn't deny that claim. You didn't deny the February 2018 claim. We didn't judge because we were sued within like 60 days of that claim. So if he hadn't provided that, then it would have been denied. What there's, what Mone was saying- But you never denied it, even after litigation ensued in multiple fora. Well, Judge, when you say we didn't deny it, we certainly denied it- You didn't send them a letter saying your claim for February 2018 is denied because we think you're playing games and not providing us correct information, your documentation is insufficient, or you have not submitted to an audit. You didn't send them that. We didn't send them that letter during litigation when he brought suit on the initial audit request. We did not send him a form. What we did judge was we sued him for unjust enrichment and a deck action, so I don't think that that- Let's talk about that claim. Yes. Florida law is very, very clear that you cannot bring an unjust enrichment claim when there is a contract between the parties on the subject matter at issue, right? Yes, Your Honor. Okay. So the hard question in this case is whether or not a clawback, a disgorgement, whatever you want to call it, is included in the subject matter of the insurance policy. Why is it not? Well, why is it not the issue, or why is it not included? I'm sorry. Why is it not included, particularly when the policy says this is when we'll pay? What it could say is in the event that we later discover that it was an improper payment, we have a right to seek back payment, it could do that. This particular contract doesn't, but why isn't that subject matter, your payment of benefits to the insured, covered by the contract, and therefore bars a quasi-contract claim for unjust enrichment? Well, Judge, I would, first of all, take it this way. They concede that there is nothing in the policy that gives us a contractual right to seek a recoupment of these benefits, number one. But does it mean, though, that their argument, though, is that the subject matter is more general in that it's about the payment of benefits, and that is covered? Well, Judge, we could not sue on that cause of action. We could not say . . . Because that's not the way you wrote your contract. Judge, we wrote the contract pursuant to the required elements under the Florida Insurance Code, which does not require that recoupment language. And I would look at . . . Does it forbid it? What? Does it forbid it? No. It doesn't forbid it. Okay. Let me give you a hypothetical. Different in this case, different subject matter. You have a contract for the sale and delivery of goods which have to be transported. Okay? The seller says it's going to cost you X for the product itself. It's going to cost you Y for the delivery, which is based, by the way, on how much it cost us to hire a truck to take it, plus the salary for the truck driver to take it. So that's your cost, cost of the product, cost of transportation. Okay? And they say it's going to . . . they want to be very upfront, and they say it's going to take us four hours to load the product onto the truck, take it to your place. So the rental of the truck for this amount of time, the hourly rate for the driver for this amount of time, is X plus Y. So you know what your cost is going to be, okay? Truck driver leaves the seller's place with the product. There is a train derailment, and now the truck is stuck for five hours. So now the seller tells the buyer, hey, you got to pay extra, because you got to pay extra for the extra hours for the truck, and you got to pay extra hours for the driver's time. Buyer says, uh-uh, not paying it. You told me X plus Y. That's all I'm paying, X plus Y. Seller says unjust enrichment. I'm suing you for unjust enrichment for the extra hours. Can you bring a claim for unjust enrichment? No, Your Honor, under those facts. And I would compare that . . . But it's not that extra time . . . Let's do it the opposite way. Let's say the estimate was it was going to be four hours, but light traffic, good day, found an alternate route, did it in three. Buyer later learns, gosh, it actually cost him an hour less to transport it to me. I want a refund. Unjust enrichment? No, Judge, because what you just said, an estimate, which is different. You said contractual number, right? I called it an estimate. The contract says this is how long it will take us, four hours, and in fact took three. And I would say the contract terms apply. But here, what we have in the recoupment, and I would cite to Your Honors the Pinewood condominium case, which basically is directly on point. And it's the Southern District of Florida case that talks about the fact that because of the policy there, it was Scottsdale Insurance, I believe, did not provide for recoupment. And they overpaid. That was the basis upon which you could bring an unjust enrichment clause of action. No, but that doesn't make sense to me, because then did this policy have an integration clause? Only in the application, Judge, which says that all the time. Didn't it say everything, all obligations, duties, rights, and everything are contained within this document, and nothing outside of it binds anybody? Not in a disability insurance policy, to my recollection, Judge. That this writing constitutes the entire agreement between the parties? You know, I hesitate before I say it, because it's an insurance policy, and it's not kind of the standard type of contract that you all are talking about. For our purposes, I thought the answer was yes, because this is what was given to the jury. This was Exhibit 1, right? I'm sorry. This contract was given to the jury? Yes. Yes. And this purported to be the totality of the agreement?  It did not? Yes. It was a totality of the contractual arrangement. I want to come back to the question the Chief Judge asked you. It's clear under Florida law that a plaintiff cannot pursue an equitable theory such as unjust enrichment or quantum merowit to prove entitlement to relief if an express contract exists. Fourth DCA said that a couple of times. The second DCA put it this way, it is well-settled law that the law will not imply a contract where an express contract exists concerning the same subject matter. Did not this agreement between these parties include the same subject matter? Dr. Perez agreed to pay a premium in X amount over a period of time in case he became disabled and couldn't perform his duties as an eye surgeon. Money agreed and said we will insure you if we receive acceptable proof of loss. You've got all kinds of other requirements. You tell them what kind of notice they have to give you. And when you tell them what kind of forms have to be filled out. You give them the forms. You tell them written proof of loss must be given to the home office between so many days. You say when you will pay claims for acceptable proof of loss. You'll say to whom you'll pay the claims. You even say we may have you examined as often as we may reasonably require while a claim continues this will be at our expense. Talks about misstatement of age. Talks about a whole lot of things. You chose not to put in a clawback provision. You could have, but chose not to and the bargain was reached about this agreement. Does not the subject matter of this contract include the very substance of what we're talking about here? And I would say no, judge. It doesn't because when in hindsight can you always add a provision to a policy to kind of solve the issue? I suppose so. But the very reason that these quasi contract case law exist is because the terms don't exist. Yeah, I think the district courts in Florida have gotten in some instances misunderstand Florida case law, a state case law about this. You don't get to add two contracts and get benefits you could have put in the contract about an issue like payment of benefits in the event of overpayment by relying upon a quasi contract theory. That is the same subject matter. It's your payment of benefits, what is owed, what the obligations of the beneficiary are, and you're just using quasi contract to rewrite the contract, which is not what Florida law allows, it seems to me. And judge, I understand your position on that, and I would say that, again, I would look at the Pinewood case, and of course that is only beneath you. Don't direct me to the Southern District of Florida, direct me to something that actually will control me. What is it in any of the DCA, or even better, Florida Supreme Court decisions that would tell me that my understanding of Florida law is wrong? What's your best authorities? Well, your honor, it's the authorities that you all cite with a different interpretation. That is, in order to find that Mone cannot recoup its benefits, you have to find, I believe, and I respectfully suggest, that they could have sued him for breach of contract for overpayment. And they couldn't find that on these facts, under this policy. That's not necessarily so. I mean, you're assuming the answer to the chief judge's question by saying if a provision is not in, you can go around the contract by seeking unjust enrichment theory. But he's suggesting to you that that may not be the way that Florida law operates. I understand. Is there any case in Florida, insurance case that's even remotely like this, where the contract was silent about disgorgement, where the payments had been made erroneously because somebody misled you, and you wanted your money back, and you sued X contract, quasi-contract, equitably for disgorgement? Not that we could find, Judge. The case on point was Pinewood Condominium, that the trial court judge relied on. It's never been addressed or distinguished in Dr. Perez's brief. And at the trial court said, I'm looking at this, it's beyond the pale of the contract, this remedy. And therefore, I'm going to allow it, deny the DV. It wasn't- But accepting all of that is true. If we were to conclude that the same subject matter covers the totality of what's really at issue in this lawsuit, you would not, without a remedy, you could have sued in tort for fraud, couldn't you? Well, we attempted to sue once- But the problem is, it was a day late and a dollar short, according to the district judge. According to the district judge, he didn't dismiss the case. He never allowed us leave to amend. He didn't allow- He didn't appeal the denial of leave to amend. Correct, correct. So, you had a remedy. You perfected it too late, according to the district judge. And you've taken no appeal from the trial court's determination that he was not going to allow that amendation. That's the state of what we have. So, it's not as if we just say, this really isn't a good ex-contract, quasi-contract claim that you would have been left without a remedy here. You didn't have to draw up your contract in a different way. You just could have sued him for fraud. And in fact, when I looked at the arguments here on unjust enrichment, sure sounded like you were pressing a fraud claim. They misled you. He misled you in material ways about the nature of his malady, the extent of the malady, and the injuries he purportedly recovered, have sustained. So, you argued fraud to the jury. It was just under the rubric of unjust enrichment. It was, Judge, under inequitable conduct. And that is only because it wasn't a choice since they had declined the audit. The facts weren't known until throughout discovery in this case. And that's when it was- And you helped me with one other issue. You're over the time, you're really on our time, but I would like your help. We also have a verdict from the jury about breach of contract. So even if you were wrong and the jury's verdict had to be vacated because this suit had to be in contract pursuant to a contract which didn't provide for it or by fraud. And you're out. What about the second verdict on Perez's breach of contract claim? There are two, I'm sorry. Let me frame my question this way. He had to present acceptable proof of loss. Everybody went to the district judge and said, judge, define the term. Interpret what acceptable proof of loss means. Does it include the requirement to conduct an audit or not? The district judge says, no, I'm not going to do it. Yes, the contract is ambiguous. I can't find anything in Florida law that governs. I'm going to send it to the jury, let them decide. That's what happened, right? Yes, Judge. That was error. The question is whether that error was fatal on the second claim. If the jury labored under the misapprehension, legal misapprehension about whether an audit was included or not within the ambit of acceptable proof of loss, they could have rejected Perez's claim simply because he didn't submit to an audit when he didn't have to submit to an audit, right? They could have, Judge. We never argued that in closing. If you look at our closing argument, it was also about one thing, that the loss was not due to disability. So we weren't arguing that there was some kind of pro forma breach where he didn't agree to one single procedure. So it's an entirely separate issue from the audit question. It's the question as to whether he had satisfied proof of loss by giving us the truth in the proof of loss, which obviously he didn't, because the jury rejected it. Suppose the jury said, we got to figure out what acceptable proof of loss means. The judge told us we got to find five things on the breach. He had to do everything he was supposed to do. He did not submit to an audit. QED, he didn't do everything he had to do. No breach of contract. We reject the breach of contract. As opposed to denying it because he lied on the forms. Or submitted information that was deceitful concerning the nature of the damage. Suppose the jury reached that decision because it based it on an erroneous conclusion of law, interpreting whether audit was included or not. Well, Judge, first of all, I would back up and say we don't believe that's inappropriate under the facts of this case. As far as audit goes, it was in the claim forms, etc. But also, it's very unlikely, unless your question makes me assume it, that they would decide this case based on the failure to do an audit when that was never argued in our closing at all. It wasn't a theory of our case that he did not comply with the audits, therefore we win. You didn't argue to the jury that reject the breach of contract claim because he didn't submit to an audit and he was supposed to?  Our entire argument was garbage in, garbage out. He gave us false information. We've uncovered it over time. We now know that he never owned the practice at the time of his onset of his claim. It was a mirror image of the issue that supported your, of the facts that supported your unjust enrichment claim. Yes, it was. So it's not a surprise if they found unjust enrichment and required disgorgement because of falsity, they obviously would not have sustained his breach claim. Correct, Judge. Consistent verdict. They were part and parcel of the same thing. Right, got it. Thank you. So thank you, Your Honors. We would ask that the judgment be affirmed. Okay, Mr. Maher, thank you. Mr. Weber, you have three minutes. Thank you. I'd like to just address that last point because it's not what the record shows. They actually elicited from their financial expert, Mr. Hoffman, in front of the jury, oh, you do these types of audits under disability policies for other insureds all the time, don't you? Yes. They made it sound like it was normal and Dr. Perez is the only one that's refusing to do an audit, right? When you had all these questions. Did they argue in closing that your client's refusal to submit to a financial audit was enough to sustain the claim for breach of contract? Our theory of breach was that they had no right to demand the audit and they argued that they did have the right under the policy and that Dr. Perez didn't do it. That was the whole case. I guess, did they argue in closing though that they, you're saying they argued in closing. They had the right. That they had that right and that that was not a basis for breach. Yes, and that was our pled theory of the case. You're saying that because it almost follows necessarily from the way you pledge your breach of contract claim. Your breach of contract claim was not that they failed to pay you, it's that they demanded an audit that the contract didn't allow them to demand. Correct, that was our entire breach of contract claim and they opposed that. And the district judge just needed to tell this jury whether the policy provided for it or not. And we believe that the rest of the elements of the case were undisputed, which is why we asked for summary judgment. He recognized on summary judgment it was a legal issue. He said, well, I couldn't find any lucid controlling law and the other issues in the case are fact bound. So he recognized this was not a fact bound issue. He just recognized he didn't have something to tell him how to answer it, and so he never did. And we asked, and we asked, and we asked. And we gave him this court's opinion, albeit under Alabama law that defined acceptable proof of loss. It's supposed to be a prima facie showing by the- That clause though didn't use the word acceptable, did it? Yes, that was actually- In the Alabama case? I believe it used acceptable. All of the policies have very similar language on that. I believe- I know it's similar, but I'm not sure it was the same. That's all I'm saying. And there were a number of cases that have used acceptable. I believe the Prudential case did say acceptable, if I recall correctly. Okay, Mr. Weber, I think we understand your case. We're gonna be in recess until tomorrow. I thank you.